IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KEVIN E. FIELDS.,**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**J M VELASCO, et al.,**<br><br>　　　　**Defendants.** | Case No. 1:07-cv-01213-AWI-JLT (PC)<br><br>**FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.**<br><br>**(Doc. 64)** |

　　　　Plaintiff Kevin Fields ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. The operative pleading is Plaintiff's Second Amended Complaint ("SAC"). Plaintiff alleges that Defendants Velasco ("Velasco") and Phillips ("Phillips") violated his First Amendment rights by retaliating against him for making verbal and written complaints about Defendant Velasco. (Doc. 68). Before the Court is Defendants' Motion for Summary Judgment. (Doc. 64). Plaintiff filed his Opposition on July 27, 2012[1] (Doc. 97) and Defendants have replied.[2] (Doc. 102). Having reviewed the

---

[1] Defendants ask this Court to disregard Plaintiff's Opposition as untimely. (Doc. 69). Given the recent Ninth Circuit ruling in Woods v. Carey (9th Cir. 2012) 684 F.3d 934 (requiring Rand notice to prisoners at the time of the dispositive motion under Rand v. Rowland, 154 F.3d 952 (9th Cir.1998)) and the fact that such notice was ultimately provided to Plaintiff by the Court on July 19, 2012 (Doc. 67), the Court denies Defendants' request and considers Plaintiff's Opposition in deciding this motion for summary judgment.

[2] As noted, supra, Defendants' objections to Plaintiff's evidence are **GRANTED**.

1

arguments and evidence of both parties, it is recommended that Defendants' motion be **GRANTED**.

## I. FACTUAL BACKGROUND

The events at issue in this case occurred in 2004. (Doc. 25). At that time, Plaintiff was incarcerated in the Security Housing Unit (SHU) at the California State Prison–Corcoran ("Corcoran"). (Doc. 25). Defendants Velasco and Phillips worked as correctional officers in the SHU at Corcoran, where Plaintiff was housed. (Doc. 64-3 at 1, 64-4 at 1).

This case primarily relates to a cell search conducted by Velasco on June 18, 2004 and property seized by Velasco during that search. (Doc. 25). Plaintiff alleges that Velasco conducted the search and seizure in retaliation for a grievance Plaintiff filed against Velasco on May 30, 2004 and verbal complaints he made to Velasco's sergeant on May 8, 2004. (Doc. 68 at 31).

Though not alleged in his complaint, now Plaintiff asserts that on May 8, 2004, he witnessed Velasco and Correctional Officer Rangel[3] refuse to feed another inmate.[4] (Doc. 68 at 31). Plaintiff states that he informed the two officers that such actions were unlawful and demanded to see the unit sergeant to complaint about their conduct. (Doc. 68 at 65, Doc. 68 at 31). Plaintiff further informed the officers that he would not relinquish his dinner tray until the sergeant arrived. (Doc. 68 at 56). On May 8, 2004, Sergeant Robertson spoke with Plaintiff about his complaints and ordered Plaintiff placed on paper tray status for withholding his dinner tray. (Doc. 68 at 66). On May 20, 2004, Velasco prepared the rules violation report, log number 4A2-04-05-07 stating the "Plaintiff delayed the unit program and delayed sergeant Robertson in the performance of his duty by requiring him to stop what he was doing and respond to the unit to deal with the issue." (Doc. 68 at 58).

On May 30, 2004, Plaintiff completed a grievance about the May 8, 2004 incident. (Doc. 68 at 31 and 65). In the grievance form, which was received by the Appeal Office on June 8, 2004,

---

[3] Correctional officer Rangel is not a defendant in the instant case.

[4] In the complaint, Plaintiff alleged that the search occurred in retaliation for the numerous lawsuits he had filed against prison officials. The complaint asserts that the search occurred and he was given reduced food portions, "in retaliation for me making verbal and/or written complaints, with the administration of the prison system; and, for exercising my First Amendment rights to file and maintain lawsuit against prison officials." (Doc. 25 at 4)

Plaintiff alleges that Velasco and Rangel refused to feed inmate Smith. (Doc. 68 at 65). The grievance attributes several statements specifically to Rangel: "Rangel apprised Velasco that Smith was a piece of shit," and that "[Rangel] advised [Plaintiff] to "turn a blind eye to the misconduct or else [Plaintiff's] program would be jeopardized." (Doc. 68 at 65-66).[5] There is no indication on its face that Velasco was aware of it or its contents.[6] (Doc. 68 at 65-66). Moreover, Plaintiff admits that the grievance was "screened out" and returned to him on the date it was received. (Doc. 68 at 39)

On June 18, 2004, Velasco conducted a search of Plaintiff's cell. (Doc. 64-4 at 1). Plaintiff's cell had not been searched since at least June 6, 2004. (Doc. 64-5 at 5-6). Velasco initiated the search while Plaintiff was on the exercise yard. (Doc. 64-4 at 1, Doc. 68 at 7 and 31). During the search, Velasco confiscated a coaxial cable, a makeshift clothesline, and a length of copper wire. (Doc. 68 at 8, Doc. 64-4 at 2 and 7). Velasco documented the items he seized on a Cell Search Receipt. (Doc. 64-4 at 7). The form list the reasons Velasco confiscated each items: 1) The cable was confiscated because it was altered; 2) the copper wire was taken because it was contraband; and 3) the clothes line was taken because state property had been altered to construct the clothes line. (Doc. 64-4 at 7). Velasco disposed of the items according to CDCR policies for disposal of contraband. (Doc. 64-4 at 2-3). Plaintiff claims that Velasco also confiscated multiple declarations Plaintiff intended to use in another lawsuit, scattered Plaintiff's property about the cell, and damaged Plaintiff's television during the search. (Doc. 25 at 3). Velasco denies any such actions. (Doc. 64-4 at 2-3).

Later that day, Plaintiff asked to speak with the sergeant about Velasco's search. (Doc. 68 at 12 and 32; Doc. 64-3 at 2). When the sergeant had not come to see Plaintiff by dinner, Plaintiff refused to return his food tray until the sergeant appeared, as he had done on May 8, 2004. (Doc. 68 at 12, 34 and 66; Doc. 64-3 at 2). Sergeant Phillips arrived at Plaintiff's cell to determine why

---

[5] In the discovery Plaintiff propounded upon Velasco, he also attributed the statements to solely to Rangel. (Doc. 68 at 54, 56-57). However, Plaintiff's declaration now attributes the statements to both Rangel and Velasco. (Doc. 68 at 35).

[6] Velasco's responses to Plaintiff's discovery deny that he was aware of Plaintiff's grievance on May 30, 2004. (Doc. 68 at 59).

1  he was withholding his tray. (Doc. 64-3 at 2). Plaintiff voiced his complaints about Velasco's
2  search and the items he took and demanded Phillips to order Velasco to return the cable and legal
3  documents. (Doc. 68 at 35). After Phillips listened to Plaintiff, Phillips placed Plaintiff on paper
4  tray status for withholding his tray. (Doc. 64-3 at2; 68 at 36). Plaintiff alleges that the following
5  day Velasco served him reduced meal portions in retaliation for his written and verbal complaints.
6  (Doc. 25 at 3).

7  On August 21, 2007, Plaintiff filed this action with the district court alleging First
8  Amendment, Fourteenth Amendment and negligence claims against numerous defendants. (Doc.
9  1). All of Plaintiff's claims were later dismissed except his First Amendment retaliation claims
10  against Defendants Velasco and Phillips. (Docs.20, 24-25).

## II. SUMMARY JUDGMENT STANDARDS

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 (internal quotation marks omitted). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Wool v. Tandem Computers, Inc., 818 F.2d 1422, 1436 (9th Cir. 1987). The party seeking summary judgment demonstrates it is appropriate by "informing the

district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323 quoting Fed. R. Civ. P. 56(c).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); Matsuhita, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 587. The party is required to tender evidence specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. Id. at 586 n.11; Fed. R. Civ. P. 56(c). In addition, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322.

### III.   DISCUSSION

#### A.   Retaliation

Prisoners have a constitutional right under the First Amendment to be free from retaliation for participating in "protected speech activities." Pratt v. Rowland, 65 F.3d 802, 806 & n. 4 (9th Cir.1995). To obtain summary judgment on a claim of retaliation, Defendants have the burden to demonstrate that there are no genuine issues of fact supported by evidence as to at least one of the essential elements of a retaliation claim and, as a result, the plaintiff cannot prevail on the claim. Celotex, 477 U.S. at 323.  "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir.2005). An allegation of

retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir.2003)

Defendants contend that they are entitled to summary judgment because (1) there is no evidence that Defendants took any adverse action against Plaintiff; (2) there is no evidence that the actions taken by Defendants were initiated because Plaintiff engaged in protected conduct, and (3) Defendants actions reasonably advanced a legitimate correctional goal. In other words, Defendants contend that there is no genuine issue of material fact precluding summary judgment in their favor with respect to element one (adverse action), element two (causation) and element five (legitimate correctional goal) of Plaintiff's First Amendment retaliation claims.

### 1. Plaintiff's Retaliation Claim Against Phillips

Plaintiff's SAC alleges that Phillips retaliated against Plaintiff when Phillips placed Plaintiff on paper tray status after Plaintiff withheld his dinner tray to in order to summon Phillips to his cell to complain about the search conducted by Velasco. (Doc. 25). Defendant Phillips states that his decision to place Plaintiff on paper tray status was based solely on Plaintiff's decision to withhold his plastic dinner tray. (Doc. 64-3 at 2). Additionally, Phillips states that his decision furthered the legitimate correctional goal of encouraging compliance with the policy regarding withholding plastic trays and discouraging Phillips from withholding his tray in the future. (Doc. 64-3 at 2). Phillips explains that an inmate on paper tray status continues to receive the same meals as other inmate, only on a different tray. (Doc. at 64-3 at 2).

In viewing the facts in the light most favorable to Plaintiff, the Court views Plaintiff's verbal complaints to Phillips about Velasco's search as protected conduct. Likewise, Plaintiff has sufficiently alleged a chilling effect on his First Amendment rights.[7] Brodheim v. Cry, 584 F.3d 1262, 1272 (9th Cir.2009) (stating that "[P]laintiff does not have to show that his speech was actually inhibited or suppressed, but rather that the adverse action at issue would chill or silence a person of ordinary firmness from future First Amendment activities.") (citation omitted).

---

[7] However, the fact that Plaintiff had been placed on paper tray status in May 2004 for withholding his tray to summon a sergeant so that Plaintiff could complain, demonstrates, at a minimum, that placing Plaintiff on paper tray status did not inhibit his speech in June 2004.

6

### a. Legitimate Correctional Goals

To prevail on his retaliation claim, Plaintiff bears the burden of pleading and proving that the action taken by Phillips in placing him on paper tray status did not advance a legitimate correctional goal. Pratt, 65 F.3d at 806. Here, it is undisputed that Plaintiff refused to return his dinner tray, that the refusal to return a tray is deemed to be a threat to the safety and security of staff and the institution, that trays are made of hard plastic, and that "for the preservation of security and order within the institution" it is incumbent that inmates obey the orders of correctional staff. (Doc. 68 at 12, UF 30, 32, 33, 37). Thus, Defendants have met their burden to show that no material facts are in dispute with regard to the fact that Phillips' decision furthered legitimate correctional goals.

Plaintiff seems to assert that a genuine issue of material fact exists because Phillips failed to have the issue of Plaintiff's paper tray status determined by the facility lieutenant, as set forth in SHU Operational Procedure No. 222. (Doc. 68 at 73). However, the copy of the policy Plaintiff has submitted is dated October 2004. (Doc. 68 at 68). Because the policy is reviewed annually in October (Doc. 68 at 68, section IV), and the incident at issue occurred in June 2004, the Court has no foundational evidence to show that the portion of the policy produced by Plaintiff was the same in June 2004. Plaintiff also argues that if Phillips had called the lieutenant, the lieutenant would not have placed him on paper tray status and would have ordered the return of his legal documents. (Doc. 68 at 37, ¶15). Plaintiff's statements are purely speculative and lack foundation. Thus, the Court will not rely upon them as evidence in support of Plaintiff's Opposition.

In evaluating the evidence on this issue, Court must "afford appropriate deference and flexibility to state officials trying to manage a volatile environment, especially with regard to 'the fine-tuning of the ordinary incidents of prison life'" (Pratt, 65 F.3d at 806 *quoting* Sandin v. Conner, 515 U.S. 472, 482-483 (1995). In light of the directive in Sandin and Court's review of the evidence before it, the Court finds that the mere fact that Phillips issued the order himself does not negate the legitimate correctional goals furthered by Phillips actions, nor does it demonstrate a disputed issue of material fact exists.

Because "prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right," the Court examines whether evidence of retaliatory motive exists. *See* Bruce v. Ylst (9th Cir. 2003) 351 F.3d 1283, 1289

### b. Causation

To show causation, Plaintiff must show that his 'protected conduct' was the "substantial or motivating factor behind the defendant's conduct." Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.1989). Therefore, at the summary judgment stage, Plaintiff need only "put forth evidence of retaliatory motive, that taken in the light most favorable to him, presents a genuine issue of material fact as to intent." Broedheim, 584 F.3d at 1271 (citing Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir.2003).

When reviewing the causal connection between Defendants' actions and Plaintiff's protected activity, the Court draws all reasonable inferences in Plaintiff's favor. However, a causal connection will not be inferred from one statement, but from the cumulative circumstances. Curtis v. Buckley (E.D. Cal., June 27, 2011) 2011 WL 2551369. To determine motivation, the Court looks to Defendant's knowledge of the protected activity, Defendant's conduct and statements, proximity in time between the protected activity and the adverse action, and the nature of the action. Soranno's, 874 F.2d at 1316; Schwartzman v. Valenzuela, 846 F.2d 1209, 1212 (9th Cir.1988).

Here, Defendants have produced evidence that the only facts Plaintiff relies upon to demonstrate retaliatory action by Phillips are the following: 1) the fact that Phillips would not order Velasco to return legal documents and the "unaltered" cable Plaintiff alleges was taken from his cell; 2) Phillips' statement to Plaintiff that he could only rely upon the property confiscation slip completed by Velasco in determining what items were confiscated, and 3) Phillips statement to Plaintiff that he was placing Plaintiff on paper tray status for withholding his dinner tray to summon Phillips to his cell to complain. (Doc. 64-6 at 8). Because such facts do not demonstrate any retaliatory motive by Phillips, Defendants have met their burden of

demonstrating the absence of a retaliatory motive by Phillips. As described above, Plaintiff's only argument in rebuttal (that Phillips failed to follow the policy), does not evidence a retaliatory intent.

Phillips was clearly aware that Plaintiff was withholding his tray because he wanted to speak with Phillips about Velasco's search.  However, Phillips statements to Plaintiff, that the confiscation slip showed no legal documents had been taken and that only an "altered" cable had been taken, are merely factual statements which do not evidence any retaliatory intent.  If Phillips had placed Plaintiff on paper tray status simply because Plaintiff summoned Phillips to his cell to complain, such facts could support a finding of retaliatory intent.  However, Plaintiff did not merely voice his complaints, he withheld his tray—knowing doing so was considered a security risk--in order to do so.[8]  Additionally, Phillips' decision to immediately place Plaintiff on paper tray status for withholding his dinner tray is consistent with Phillips' desire to promptly address potential safety concerns in the SHU and not a intent to retaliate.  Yelenich v. Cate (N.D. Cal., Mar. 23, 2011) 2011 WL 1100124 (explaining that "[w]hen the causation element of Rhodes is combined with the pleading requirements of Iqbal, it is apparent that to state a retaliation claim a prisoner must plead sufficient facts to make plausible a claim that the defendants' actions were motivated by a desire to retaliate for his exercise of a constitutional right, rather than by some other motive.)  Given that no facts exist to demonstrate a retaliatory intent by Phillips, it is recommended that the retaliation claim against Phillips be dismissed.

**c.  Adverse Action**

It is undisputed that Plaintiff was placed on paper tray status.  (Doc. 36 at 76, ¶13).  Defendants assert that such action should not be considered an "adverse action" because it was "relatively minor" (in light of Phillips testimony that food portions are the same as the plastic tray servings).  (Doc. 64-1 at 10-11).  Plaintiff attaches several declarations from other inmates stating

---

[8] Plaintiff seems to be under the impression that he is entitled to withhold his tray for the purpose of complaining about an officer to a superior and that, in doing so, prison officials are precluded from placing him on paper tray status as a result.  Clearly, Plaintiff *knew* that withholding the tray posed such a security risk that it would cause the sergeant to respond to his cell immediately; that is why Plaintiff did it.  However, his decision to use this tactic meant that prison officials were entitled to mitigate future security risks, by placing him on paper tray status.

1  that the food portions are smaller on the paper trays. (Doc. 68 at 21, 22, 27). While such
2  conflicting statements may constitute a dispute as to whether paper tray status should be
3  considered an "adverse action," the lack of evidence supporting Phillips' retaliatory intent make
4  this issue immaterial. <u>Celotex</u>, 477 U.S. at 322 ("failure of proof concerning an essential element
5  of the nonmoving party's case necessarily renders all other facts immaterial").

### 2. Plaintiff's Retaliation Claims Against Velasco

Plaintiff's SAC alleges that Velasco searched Plaintiff's cell, confiscated items, and served him diminished food portions on one occasion, in retaliation for complaining about and filing a grievance against Velasco. (Doc. 25).

#### a. Cell Search

Defendants rely on the Declarations Velasco and Kimbrell, the custodian of records to support their argument regarding causation and legitimate correctional goals. Through Kimbrell's declaration, Defendants demonstrate that the June 18, 2004 search of Plaintiff's cell was the only search that occurred between June 6, 2004 and June 29, 2004. (Doc. 64-5 at 1-6). Velasco states that he has never retaliated against Plaintiff and that the search he conducted on Plaintiff's cell was routine. Velasco states that the search was performed to detect and control contraband and maintain institution security. (Doc. 64-4 at 1-2). His declaration describes the three items he confiscated and the reasons he confiscated them. (Doc. 64-4 at 2). Velasco attests that he disposed of the items according to CDCR policies for disposal of contraband. (Doc. 64-4 at 2-3). Velasco also submits a copy of the "Cell Search Receipt" he prepared following the search which details the items removed and the reasons for removal. (Doc. 64-4 at 7). Velasco denies that he confiscated any other items, that he scattered Plaintiff's property about the cell, or that he damaged Plaintiff's television buttons. Such evidence is sufficient to demonstrate that Defendants have met their burden of showing the absence of a genuine issue of material fact; namely, Velasco's retaliatory motive and that the search lacked a correctional purpose.

While Plaintiff's Opposition attempts to counter Defendants' evidence with declarations from inmates, Robinson, Lamon and Kennedy, the declarations do not set forth evidence of a retaliatory motive for the cell search. The declarations of inmates Robinson and Lamon merely

describe specific instances in which they claim that Velasco retaliated against them. (Doc. 68 at 21 and 23). They do not set forth any facts to support Plaintiff's allegations that Velasco searched Plaintiff's cell to retaliate against Plaintiff. Likewise, the declaration of inmate Kennedy, which sets forth statements by Velasco, does not support a retaliatory motive. Kennedy's declaration states that he heard Velasco state the following: "Fucking Fields is snitching on me in a lawsuit because I broke the buttons on his TV, took his cable and legal work, then gave him the special treatment with the paper tray meal." (Doc. 68 at 27). Though the statement may support Plaintiff's claim that Velasco damaged the TV, took the legal documents, and served Plaintiff smaller food portions, the statement does not support Plaintiff's allegation that such actions occurred *because* Plaintiff complained about Velasco on May 30, 2012. As a result, the statement does not provide evidence of retaliatory conduct.

Plaintiff also submits his own declaration and the copy of the May 30, 2004 grievance he filed; yet neither of these documents demonstrates Velasco was aware Plaintiff filed a grievance. Plaintiff's May 30, 2004 grievance, which was stamped as received by the Appeal Office on June 8, 2004, alleges that Velasco and Rangel refused to feed inmate Smith. (Doc. 68 at 65). However, the grievance form itself is not signed by Velasco, and therefore does not indicate that Velasco was aware of it or its contents. (Doc. 68 at 65.) Moreover, Plaintiff admits that the grievance was "screened out" on the same date it was received by the Appeals Office which supports Velasco's statement that he was unaware that the complaint had been submitted. (Doc. 68 at 39) Plaintiff has put forth no other evidence to show that Velasco was aware of the May 2004 grievance or that that Velasco made any statements to Plaintiff following his May 30, 2004 grievance that would indicate that he was aware of the complaint.

Likewise, the timing of Velasco's search of Plaintiff's cell does not tend to show a retaliatory motive. The protected conduct alleged by Plaintiff began on May 8, 2004 with the verbal complaints to the sergeant on duty and were followed by Plaintiff's May 30, 2004 grievance. Velasco's search occurred on June 18, 2004, over a month after the May 8th incident and nearly two weeks after the Appeals Office received Plaintiff's grievance.

The only evidence of Velasco's intent relates to the verbal complaints Plaintiff voiced on May 8, 2004 to the sergeant. Plaintiff's evidence, viewed in the light most favorable to him, demonstrates that Velasco knew: 1) Plaintiff wanted to verbally complain to the sergeant about Velasco's failure to feed inmate Smith on May 8, 2004 (Doc. 68 at 55-56, Doc. 68 at 31; 2) that Plaintiff was withholding his dinner tray until he could speak with the sergeant about the Velasco (Doc. 68 at 56, Doc. 68 at 31); and 3) that Plaintiff did speak to the sergeant on May 8, 2004. (Doc. 68 at 57-58, Doc. 68 at 31). There is no evidence that Velasco made any statements to Plaintiff regarding Plaintiff's May 8th complaints to Velasco's sergeant or that Velasco was even aware that the reason Plaintiff wanted to speak to the sergeant that day had anything to do with Velasco. Beyond Plaintiff's allegations, the timing and nature of the adverse action do not support a finding of retaliatory animus. Therefore, the Court recommends that the motion for summary judgment, related to the claim retaliation claim for the cell search be **GRANTED**.

### b. Diminished Food Portions

Plaintiff's SAC alleges that on June 19 2004, Velasco prepared Plaintiff's paper food tray and gave him diminished food portions. (Doc. 25 at 3). Plaintiff alleges that Velasco did this to retaliate against Plaintiff for the complaints Plaintiff made about Velasco's conduct.[9] (Doc. 25 at 3). Defendants' have produced evidence that multiple officers are involved in the preparation of inmate meals and that different officers are responsible for placing different items of food on the tray. (Doc. 64-4 at 3). Velasco could not recall if he was involved in preparing Plaintiff's food tray on June 19, 2004. (Doc. 64-4 at 4). If he was involved, he would have been able to reduce the portion size of only one food item. Id. Moreover, Velasco testified that if he was involved in the food tray preparation, he would have acted in accordance with his custom to provide all inmates with the same portion size. Id. Based upon this evidence, Defendants have met their burden of establishing the absence of a genuine issue of material fact; namely that Velasco prepared Plaintiff's food tray on June 19, 2004 and, alternatively, if he did, he did not provide him with diminished portions.

---

[9] It is unclear whether the protected conduct Plaintiff refers to here relates to the May 8th verbal complaints and subsequent grievance or the verbal complaints made to Phillips on June 18th.

Plaintiff counters Defendants' evidence with various declarations. Declarants Robinson and Lamon contend that Velasco has served them diminished portions of food while they were on paper tray status. (Doc. 68 at 23 and Doc. 68 at 21). To the extent that these portions of the declarations seek to prove the Velasco's conduct on June 19, 2004 based upon prior alleged conduct or seek to attack his character, they are not admissible. *See* F.R.E. 404, 405 and 608.[10] Additionally, these declarants make numerous legal conclusions as to the reasons for Velasco's alleged actions without further support. *See* F.R.E. 701. For these reasons, the Court does not consider the portions of the declarations referenced above.

Plaintiff has also submitted his own declaration and the declaration of inmate Kennedy to support his argument that Velasco prepared his paper meal tray on June 19, 2004. (Doc. 68 at 27, 37-38). Plaintiff's declaration does not show personal knowledge that Velasco prepared his food tray; Plaintiff merely relies on the statements made to him by others. (Doc. 68 at 37-38). As Defendants correctly point out, such statements are hearsay and cannot be relied upon to establish a genuine issue of material fact. *See* F.R.E. 802. (Doc. 69 at 1-2). Kennedy, on the other hand, declares that he overheard Velasco talking to another officer about Fields and heard Velasco admit that he (Velasco) "gave [Fields] the special treatment with the paper tray meal." (Doc. 68 at 27). While Kennedy's statement (based on personal knowledge and made under oath) is sufficient to establish a disputed issue of fact exists as to whether Velasco prepared Plaintiff's paper tray meal, the statement does not support Plaintiff's allegation that Velasco served Plaintiff smaller food portions *because* Plaintiff complained about Velasco. As a result, the statement does not provide evidence of retaliatory conduct. Due to the lack of evidence regarding retaliatory intent, it is therefore recommended that Plaintiff's retaliation claims against Velasco regarding diminished food portions be dismissed.

However, Plaintiff's verbal complaints to Phillips on June 18, 2004 about Velasco's actions during the search of his cell were conducted in Velasco's presence. (Doc. 68 at 35)

---

[10] Several of the declarations submitted by Plaintiff state that the paper trays actually hold less food than the plastic trays. From this testimony, it is unclear whether they claim Velasco actually served them less food because of some retaliatory motive or because the paper tray simply holds less food.

Plaintiff contends that the following day, Velasco served him diminished food portions. Taking this evidence and all reasonable inferences thereto in Plaintiff's favor, this is sufficient to demonstrate that Velasco reduce the meal portions in retaliation for Plaintiff's complaint the day before. However, this does not end the analysis.

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir.2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir.2000); see also Lewis v. Jacks, 486 F.3d 1025 (8th Cir.2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir.2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir.2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir.2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir.2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir.2001). Not every unfavorable or unpleasant action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was *clearly* and *significantly* adverse to the plaintiff. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2004) (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) (retaliatory placement in administrative segregation for filing grievances); Bruce v. Ylst, 351 F.3d 1283, 1288 (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir.1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (retaliatory prison transfer and double-cell status); Rizzo v. Dawson, 778 F.2d 527, 530-32 (9th Cir. 1985) (retaliatory reassignment out of vocational class and transfer to a different prison).

Here, the Court has no hesitation in finding that, while unpleasant and mean-spirited, being provided a smaller meal on one occasion would not chill a person or ordinary firmness from exercising his First Amendment rights. As a result, it is recommended that Defendant's motion be **GRANTED**.

///

///

**B.     Qualified Immunity**

"The doctrine of qualified immunity protects government officials from liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The qualified immunity standard allows for mistakes in judgment by protecting all but the plainly incompetent or those who knowingly violate the law. Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589, citing Malley v. Briggs, 475 U.S. 335, 341 106 S.Ct. 1092 (1986). To determine whether qualified immunity is appropriate, the Court can consider whether Plaintiff has demonstrated a constitutional violation and whether the subject violation is a clearly established right. *See* Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

As this court pointed out in Pratt, "the prohibition against retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." 65 F.3d at 806 (citing Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir.1995)).  However, because the Court recommends the motion be granted, as set forth above, the Court does not determine here whether Defendants would be entitled to qualified immunity.

**IV. RECOMMENDATION**

Based on the foregoing, the Court recommends,

1.   That the motion for summary judgment against defendant Phillips be **GRANTED**;

2.   That the motion for summary judgment against defendant Velasco be **GRANTED**;

These Findings and Recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within fourteen days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Replies to the objections shall be filed within fourteen days after service of the objections. The District Judge will then review the Magistrate Judge's

ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  Failure to file objections within the specified time may waive the right to appeal the District Judge's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 20, 2012**                          <u>     /s/ Jennifer L. Thurston</u>
                                                                    UNITED STATES MAGISTRATE JUDGE